## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| GAYL WEINMANN, Individually and for Others Similarly Situated | CASE NO. 2:22-CV-1140-CCW |
| *Plaintiff,* | Collective Action (29 U.S.C. § 216(b)) |
| vs. | |
| CONTRACT LAND STAFF, LLC | Class Action (Fed. R. Civ. P. 23) |
| *Defendant.* | |

## DEFENDANT CONTRACT LAND STAFF, LLC'S
## REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS

**I.    Illinois Courts Have Consistently Rejected The Notion That Statutory Overtime Obligations Are Imputed As "Implied Terms" To All Employment Agreements.**

The IWPCA does **not** provide an independent right to payment of wages or benefits; instead, it only enforces the terms of an existing contract or agreement. *See, e.g., Brown v Lululemon Athletica, Inc*., No. 10-cv-5672, 2011 WL 741254, at *3 (N.D. Ill. Feb. 24, 2011). Absent an express agreement to pay overtime, Illinois courts reject attempts by plaintiffs to invoke "the IWPCA [as] an appropriate mechanism for enforcing the overtime wage laws." *Jaramillo v. Garda, Inc.*, No. 12-cv-662, 2012 WL 1378667, at *2 (N.D. Ill. Apr. 20, 2012).[1]

Plaintiff cites to *Selcke v. New England Insurance Company* and *McMahon v. Chicago Mercantile Exchange* to support her contention that the IMWL is part of "implied terms" of any employment agreement with CLS. Opp. at 3. Both cases are readily distinguishable because they

---

[1] *See also Gibbs v. Abt Elecs., Inc.*, No. 21-cv-6277, 2022 WL 1641952, at *7 (N.D. Ill. May 24, 2022) ("[T]o survive dismissal, the plaintiff must point to an agreement supporting the IWPCA claim that is more than an allegation that the employer is bound by existing overtime laws."); *Brown v. DS Services of Am., Inc.*, 246 F. Supp. 3d 1206, 1222 (N.D. Ill. 2017) ("In contrast to the IMWL, … the IWPCA 'does not establish a substantive right to overtime pay.'"); *Palmer v. Great Dane Trailers*, No. 05-cv-1410, 2005 WL 1528255, at *4 (N.D. Ill. Jun. 28, 2005) (where plaintiff had suggested no agreement that itself required the employer to pay overtime, the correct vehicle for the overtime claim was the FLSA or IMWL); *DeMarco v. Nw. Mem'l Healthcare*, No. 10-cv-397, 2011 WL 3510896, at *6 (N.D. Ill. Aug. 10, 2011) ("Unlike FLSA and IMWL, IWPCA does not establish a substantive right to overtime pay.").

involved **commercial** disputes where the imputed laws were **procedural** laws like the "time computation statute" in *McMahon* (*see* 221 Ill. App. 3d at 945) or the "right of setoff" in "any contract with an insolvent insurance company" in *Selcke* (*see* 995 F.2d at 689).

By contrast, Plaintiff attempts to impute into her **employment** agreement a minimum wage and overtime statute that provides **substantive** rights. Even though the FAC contains no allegation stating or even suggesting that payment of overtime was ever expressly or implicitly agreed to, Plaintiff attempts to use the IWPCA to enforce her IMWL statutory rights. But, Illinois courts consistently hold that "[a] violation of ... the IMWL alone, without a corresponding violation of an employment contract or agreement … **cannot** establish a violation of the IWPCA." *Gallardo v. Scott Byron & Co.*, 12-CV-7202, 2014 WL 126085, at *14 (N.D. Ill. Jan. 14, 2014); *see* FN 1.

Plaintiff cites *Gallardo* to argue that the requisite "agreement" under the IWPCA "need not be a 'formally negotiated contract,' nor must it contain the 'formalities and accompanying legal protections of a contract.'" Opp. at 3 (quoting 2014 WL 126085, at *14). But the *Gallardo* court still rejected the plaintiff's attempt to rely on an "implicit agreement" to sustain his IWPCA claim: "Even an implicit agreement . . . requires a '**manifestation of mutual assent**' on the part of the employer and the employee." *Id.* at *16 (emph. added). Here, Plaintiff similarly contends that the overtime obligations under the IMWL are "implied terms" of her employment agreement, but the FAC is devoid of any allegation of "manifestation of mutual assent" that CLS agreed to such "implied terms" to pay overtime to ROW Agents. In fact, the only way to reasonably construe the FAC is that there was an explicit agreement to **not** pay Plaintiff and other ROW Agents overtime because the FAC repeatedly states that CLS **never** paid overtime to any of them.

Because Plaintiff acknowledges that the "agreement to be paid on a day rate basis" is the requisite "agreement" to sustain the IWPCA claims, this Court should review the terms of this

agreement.[2] Those terms are clear there was never an "implicit agreement" or "implied terms" to pay overtime.[3] Critically, this agreement establishes a "***guaranteed minimum salary*** that will be approximately 75% of your usual earnings at the assigned Day Rate for your normal scheduled workweek." *See id.* (emph. added). The notion of a "guaranteed minimum salary" is fundamentally inconsistent with the payment of overtime—indeed, an employer's agreement to provide a "guaranteed minimum salary" indicates an express intent to meet the FLSA's "salary basis test" to qualify for an exemption. This language conclusively shows there was never any "manifestation of mutual assent" by CLS to pay overtime to ROW Agents. *Gallardo*, 2014 WL 126085, at *16.

## II.    Both *Partlow v. Johnson* and *Wharton v. Comcast Corp.* Were Wrongly Decided and Distinguishable From This Case.

Plaintiff relies heavily on *Partlow v. Johnson*, particularly its statement that it is "reasonable that parties … would assume the [employment] agreement terms would not violate the law—such as providing for overtime pay." No. 3:18-CV-01441-DGW, 2018 WL 5312335, at *3 (S.D. Ill. Oct. 26, 2018). But *Partlow* is factually distinguishable because the plaintiff was paid on an ***hourly*** basis and specifically alleged that she "worked four to six hours more than the time she reported" to her employer. *See id.* at Dkt. 1-1 at ¶ 8 (S.D. Ill. July 25, 2018). The *Partlow* plaintiff further alleged that her employer said she was in "an agricultural business that is exempt from paying overtime,"[4] but then assigned her non-agricultural duties that caused her to regularly

---

[2] *See* Dkts. 21-3, 21-4, and 21-5 (Exhs. 3, 4, and 5 to Plaintiff's Memorandum of Law in Support of Weinmann's Motion for Conditional Certification); *see also* Dkt. 21 at ECF 7 (citing to Exhs. 3, 4, and 5 to show that "CLS paid Weinmann and the Day-Rate ROW Agents the same day rate for each day worked"). When ruling on a Rule 12(b)(6) motion to dismiss, "the court must consider … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Howard v. Arconic Inc.*, 2:17-CV-1057, 2021 WL 2561895, at *4 (W.D. Pa. June 23, 2021) *see also U.S. v. Shumaker*, CR 09-87, 2011 WL 13176084, at *10 (W.D. Pa. Mar. 28, 2011) ("[A] court may take judicial notice of a prior judicial opinion and matters of public record, including court filings.").

[3] *See* Dkt. 21-3 at 2 ("Pay Rate: $300/day"); Dkt. 21-4 at 2 ("Pay Rate: $300/day"); Dkt. 21-5 at 2 ("Pay Rate: $290/day").

[4] *See* 29 U.S.C. § 213(6), (12), and (13) (overtime provisions of the FLSA are not applicable to an "employee employed in agriculture" subject to certain conditions); 820 ILCS 105/4a(2)(C) (overtime provisions of the IMWL "are not applicable to . . . [a]ny employer of agricultural labor, with respect to such agricultural employment").

work "four to six hours of overtime." *Id.* at ¶ 4; 2018 WL 5312335, at *2. On these distinguishable facts, the court opined that it was "unlikely that Partlow agreed to perform these additional [non-agricultural] duties without compensation," and that it was "reasonable" to assume that the parties' "agreement terms would ... provid[e] for overtime pay." 2018 WL 5312335, at *3.

Here, unlike *Partlow*, Plaintiff alleges that ROW Agents were paid pursuant to an agreed upon "day rate," which she describes as "a flat amount for each day worked . . . without overtime compensation." FAC, ¶ 5. Thus, Plaintiff's situation differs significantly from hourly employees like the *Partlow* plaintiff, who would generally be entitled to extra compensation including overtime for working extra hours, because Plaintiff received a "flat amount for each day worked" ***regardless*** of the number of hours worked on any given day. Moreover, the FLSA provides a specific mechanism—known as a "weekly guarantee"—to enable day rate employees to meet the FLSA's salary basis test and be classified as an exempt employee. *See* 29 C.F.R. § 541.604(b). Indeed, the very "agreement" that Plaintiff must rely upon to sustain the IWPCA claims specifically provides such a "guaranteed minimum salary" and further contains language designed to satisfy the "reasonable relationship test" set forth in the applicable regulation. *See* FN 2. Based on these distinguishable facts in this case, the analysis in *Partlow*—that it would be "reasonable" to simply assume that the parties agreed to provide overtime pay—is entirely inapplicable.[5]

Plaintiff also relies on *Wharton v. Comcast Corporation* to counter *Jaramillo v. Garda,*

---

[5] Even so, *Partlow* was wrongly decided, and the *Partlow* court's analysis is fundamentally inconsistent with the extensive body of Illinois case law holding that statutory obligations under the IMWL cannot be automatically imputed to an employment agreement under the IWPCA. *See supra* FN 1. The *Partlow* court acknowledged that other courts have disagreed with its conclusion, but declined to adopt the majority view and reasoned that it would "essentially require[] a plaintiff to affirmatively bargain for overtime pay regardless of their legal right to such compensation." 2018 WL 5312335, at *3. This reasoning is flawed because it ignores the fact that such employees who did not "bargain for overtime pay" in their employment agreement would nevertheless ***still*** have a viable cause of action under the IMWL for the exact same overtime claim. Indeed, the fact that the IMWL provides a direct cause of action for employees to claim unpaid overtime (based on a statutory right) is the ***very reason*** that Illinois courts by and large have not allowed the IWPCA to be used to claim unpaid overtime (based on a non-existent contractual right), which would effectively circumvent the three-year statute of limitations for IMWL claims.

*Inc.*, cited by CLS.  Opp. at 4.  The *Wharton* court emphasized that the Illinois Department of Labor ("IDOL") changed its "form for filing a wage claim under the IWPCA" to include "a spot for IWPCA claimants to claim overtime violations." 912 F. Supp. 2d at 661. But a review of the **current** IDOL form for claiming unpaid wages shows that the IDOL now recognizes the important **distinction** between a claim for unpaid overtime under the IMWL versus a claim for unpaid wages under the IWPCA, as it is now separated into two different sections.[6] Section 1 is designed to be used for a "WAGE CLAIM"—i.e. claims for "unpaid wages, vacation pay, bonus, commissions or if [the employee] believes [the] employer has made illegal deductions from [] pay"—which fall under the IWPCA. *See id.* Section 2, by contrast, is designed to be used for a "MINIMUM WAGE/OVER TIME" claim. *See id.* This separation of "WAGE CLAIM[S]" from "MINIMUM WAGE/OVER TIME" claims (along with different procedures used by the IDOL to process the two types of claims) confirms the *Jaramillo* court's reasoning while rendering *Wharton* invalid.

## III.  Conclusion

Based on the foregoing, CLS respectfully requests that this Court grant its Partial Motion to Dismiss and enter an order dismissing Plaintiff's IWPCA claim with prejudice and without further leave to amend.  Upon dismissal of the IWPCA claim, the Court should reinforce its November 29, 2022 Order striking the IL Class as overbroad in temporal scope, thereby limiting the proposed class definition for Plaintiff's IMWL claim to a three-year period.  CLS further requests that the Court award it any other relief that this Court deems fair and just.

---

[6] *See* https://labor.illinois.gov/content/dam/soi/en/web/idol/forms/documents/Wage%20Complaint%20Form.pdf (last accessed January 20, 2023); *see also* https://labor.illinois.gov/complaints.html ("IDOL uses a single wage claim application form that allows individuals to file claims under Illinois' Minimum Wage Law (MWL) and/or the Illinois Wage Payment and Collection Act (IWPCA).") (last accessed January 20, 2023).  The Court may take judicial notice of the IDOL form and IDOL website because it is a matter of *public record* published by a governmental entity. *See Lemmons v. Doe*, 1:20-CV-00328, 2021 WL 1872954, at *1 (W.D. Pa. Mar. 11, 2021) ("[P]ublic records and government documents, including those available from reliable sources on the Internet, are subject to judicial notice.").

Date: January 23, 2023

Respectfully submitted,

*/s/ Meghaan C. Madriz*
Meghaan C. Madriz (*pro hac vice*)
mmadriz@mcguirewoods.com
Texas Bar No. 24070241
S.D. Tex. No. 1062431
MCGUIREWOODS LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
(832) 255-6365 Telephone
(832) 214-9935 Facsimile

Adam T. Simons
Pa. Id. No. 322256
MCGUIREWOODS LLP
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202
410-659-4417
asimons@mcguirewoods.com

**ATTORNEYS FOR DEFENDANT
CONTRACT LAND STAFF, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has served on all counsel of record in accordance with the Federal Rules of Civil Procedure using the ECF system on this 23rd day of January 2023.


*/s/ Meghaan C. Madriz*

Meghaan C. Madriz