**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| GAYL WEINMANN, Individually and for Others Similarly Situated, | § § § | |
| *Plaintiff,* | § § | |
| | § | CASE NO. 2:22-cv-01140-CCW |
| v. | § § | |
| CONTRACT LAND STAFF, LLC, | § § | |
| *Defendant.* | § § | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**
<u>**AND COURT-AUTHORIZED NOTICE**</u>

Date: May 10, 2023

Respectfully submitted,

<u>*/s/ Adam T. Simons*</u>
Adam T. Simons
Pa. Id. No. 322256
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202
410-659-4417
asimons@mcguirewoods.com

Meghaan C. Madriz (*admitted pro hac vice*)
mmadriz@mcguirewoods.com
Texas Bar No. 24070241
S.D. Tex. No. 1062431
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
(832) 255-6365 Telephone
(832) 214-9935 Facsimile

**ATTORNEYS FOR DEFENDANT**
**CONTRACT LAND STAFF, LLC**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

   A.   Plaintiff's counsel previously sought, and was denied, a nationwide
        collective action. ............................................................................................ 2

   B.   Plaintiff's Motion relies on the same failed allegations as *Clark*. ......................... 3

   C.   CLS' "ROW Agents" have distinct job titles and duties. ..................................... 4

   D.   ROW Agents' day-to-day job duties also vary project to project. ........................ 6

   E.   CLS pays ROW Agents on a salary basis and classifies them as exempt. ............ 7

   F.   Plaintiff and Opt-In Plaintiffs evidence the distinctions among the various
        "Right of Way Agent" positions. ....................................................................... 8

III.  ARGUMENT & AUTHORITIES ..................................................................... 9

   A.   Given the *Clark* decision, conditional certification is futile and—at the
        very least—demands the application of an intermediate standard. ...................... 9

        1.   Given discovery conducted in *Clark*, the intermediate standard
             should apply. ........................................................................................ 10

        2.   The reasoning in *Clark* shows certification should ultimately be
             denied. ................................................................................................. 13

   B.   Plaintiff fails to satisfy her burden to merit conditional certification. ................ 14

        1.   There is no reasonable basis for Plaintiff's allegations of FLSA
             violations because ROW Agents are paid on a salary basis. ................... 15

             i.    *CLS' Minimum Salary Guarantee satisfies 29 C.F.R. §
                   541.604(b).* ................................................................................ 15

             ii.   *Plaintiff does not—and cannot—refute that CLS'
                   compensation policy for ROW Agents is a minimum
                   guaranteed salary.* ..................................................................... 17

        2.   The need for individualized inquiries defies certification. ..................... 19

             i.    *ROW Agents are properly classified as exempt and
                   necessitate individualized inquiries into the duties and
                   discretion of each employee.* ....................................................... 20

             ii.   *Allegations related to any payment discrepancies, likely
                   attributable to properly-made deductions, also require an
                   individualized analysis.* ............................................................... 21

   C.   Alternatively, this Court can only conditionally certify a narrowed
        collective action. ........................................................................................... 22

IV.   CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. QVC, Inc.*,
No. CV 21-0646, 2021 WL 5906242 (E.D. Pa. Dec. 14, 2021) ..............................................25

*Barrera v. US Airways Grp., Inc.*,
2013 WL 4654567 (D. Ariz. August 30, 2013) ........................................................................25

*Bellan v. Capital BlueCross*,
496 F. Supp. 3d 854 (M.D. Pa. 2020) ......................................................................................25

*Bethel v. BlueMercury, Inc.*,
No. 21 CIV. 2743 (KPF), 2022 WL 3594575 (S.D.N.Y. Aug. 22, 2022) ...............................23

*Bigger v. Facebook, Inc.*,
947 F.3d 1043 (7th Cir. 2020) .................................................................................................14

*Boyington v. Percheron Field Servs., LLC*,
No. 14-90, 2015 WL 3756330 (W.D. Pa. June 16, 2015) ......................................................25

*Bramble v. Wal-Mart Stores, Inc.*,
No. CIV.A.09-4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) ...................................18, 21

*Bunyan v. Spectrum Brands, Inc.*,
No. 07-CV-0089-MJR, 2008 WL 2959932 (S.D. Ill. July 31, 2008) ......................................12

*Cosmo Clark v. Contract Land Staff, LLC*,
C.A. No. 4:20-cv-02620 (S.D.T.X. July 24, 2020)......................2, 3, 4, 7, 9, 10, 11, 12, 13, 14

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..................................................................................................................23

*Delara v. Diamond Resorts Int'l Mktg., Inc.*,
2020 WL 2085957 (D. Nev. Apr. 30, 2020) ...........................................................................24

*In Re: Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*,
No. 2:07-CV-01687-JFC, 2010 WL 3447783 (W.D. Pa. Aug. 13, 2010) ..............................18

*Fischer v. Fed. Express Corp.*,
42 F.4th 366 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 1001 (2023).........................................22

*Fitch v. Giant Eagle Inc.*,
No. 2:18-CV-01534-RJC, 2020 WL 8620076 (W.D. Pa. Oct. 28, 2020)................................24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)........................................................................................23

*Guzelgurgenli v. Prime Time Specials Inc.*,
    883 F. Supp. 2d 340 (E.D.N.Y. 2012) ..............................................................25

*Hall v. Guardsmark, LLC*,
    No. CIV.A. 11-213, 2012 WL 3580086 (W.D. Pa. Aug. 17, 2012) ....................18

*Henkel v. Highgate Hotels, LP*,
    No. 3:15-CV-01435, 2021 WL 2550203 (M.D. Pa. June 22, 2021)...................11

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989)........................................................................................14

*Kolasa v. BOS Sols., Inc.*,
    No. CV 17-1087, 2018 WL 3370675 (W.D. Pa. May 10, 2018)........................17

*Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*,
    No. CIV. A. 09-CV-379, 2009 WL 1515175 (W.D. Pa. June 1, 2009)................19

*Mallory v. Norfolk S. Ry. Co.*,
    266 A.3d 542 (Pa. 2021), *cert. granted*, 142 S. Ct. 2646 (2022).....................23

*Martin v. Citizens Fin. Group, Inc.*,
    2013 WL 1234081 (E.D. Pa. Mar. 27, 2013) ....................................................18

*Moore v. PNC Bank, N.A.*,
    No. 2:12-CV-1135, 2013 WL 2338251 (W.D. Pa. May 29, 2013) .....................20

*Pierce v. Apache Corp.*,
    No. CV H-18-1803, 2019 WL 338129 (S.D. Tex. Jan. 28, 2019)........................25

*Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*,
    No. CV 15-482, 2016 WL 3077936 (E.D. Pa. June 1, 2016) .............................15

*Sellers v. Sage Software, Inc.*,
    No. 1:17-CV-03614-ELR, 2018 WL 5631106 (N.D. Ga. May 25, 2018)............25

*Severtson v. Phillips Beverage Co.*,
    137 F.R.D. 264 (D. Minn. 1991).......................................................................25

*Skaggs v. Gabriel Bros., Inc.*,
    No. 1:19-CV-02032, 2021 WL 254113 (M.D. Pa. Jan. 26, 2021)............13, 19, 20

*Sloane v. Gulf Interstate Field Servs., Inc.*,
    No. 4:16-CV-01571, 2017 WL 1105236 (M.D. Pa. Mar. 24, 2017)
    .........................................................................10, 11, 12, 13, 15, 18, 24

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011) ..........................................................................................10

*Sperling v. Hoffman-La Roche Inc.*,
    862 F.2d 439 (3d Cir. 1988), *affirmed*, *Hoffman-La Roche Inc v. Sperling*, 493
    U.S. 165 (1989) ...............................................................................................25

*Steinberg v. TD Bank, N.A.*,
    No. 10–5600, 2012 WL 2500331 (D.N.J. June 27, 2012) .......................................25

*Swank v. Wal-Mart Stores, Inc.*,
    No. 2:13-CV-1185, 2018 WL 2684102 (W.D. Pa. June 5, 2018) ..............................11, 12, 15

*Thomas v. Walmart, Inc.*,
    No. 18-4717, 2019 WL 7041809 (E.D. Pa. Dec. 19, 2019)......................................25

*Valte v. United States*,
    155 Fed. Cl. 561 (2021) ....................................................................................18, 19

*Wilkerson v. Walgreens Specialty Pharmacy LLC*,
    No. CV-21-01427-PHX-JAT, 2022 WL 15520004 (D. Ariz. Oct. 27, 2022) ..................23

*Zavala v. Wal Mart Stores Inc.*,
    691 F.3d 527 (3d Cir. 2012)...............................................................................10, 11

**Statutes**

29 U.S.C. § 216(b) ....................................................................................................3, 14, 19

**Other Authorities**

29 C.F.R. § 541.100, *et seq.*.......................................................................................20

29 C.F.R. § 541.200(a)...............................................................................................20

29 C.F.R. § 541.602(b) ..............................................................................................21, 22

29 C.F.R. § 541.603(a)-(c)..........................................................................................22

29 C.F.R. § 541.604(b) ..............................................................................................15, 16, 17

# I.     INTRODUCTION

Over the past three years, Plaintiff Gayl Weinmann's ("Plaintiff") counsel has actively recruited "class representatives" and initiated multiple lawsuits against Defendant Contract Land Staff, LLC ("CLS") in different venues, seeking to certify a class of "Right of Way Agents" allegedly paid a day-rate. Plaintiff's counsel's serial litigation strategy is doomed, as the underlying allegations against CLS are fatally flawed and cannot support a nationwide collective action under the Fair Labor Standards Act ("FLSA"). Indeed, despite Plaintiff's best attempts to distinguish the instant matter, Plaintiff's Motion for Conditional Certification and Court-Authorized Notice ("Motion") relies on the same lawful minimum salary guarantee compensation structure and properly classified exempt positions that resulted in denial of collective action certification in a nearly identical, previously filed lawsuit. In light of this prior decision and for the same reasons articulated therein, this Court should similarly deny FLSA conditional certification.

First, given the amount of discovery provided to Plaintiff's counsel since the initiation of the first lawsuit against CLS, this Court should apply an intermediate standard in its conditional certification analysis. Next, the available evidence once again affirms that CLS' "ROW Agents" are paid a minimum guaranteed salary consistent with the FLSA—not, as Plaintiff alleges, an unlawful "day rate." Further, because CLS classifies its multiple ROW Agent positions as exempt and is entitled to take certain full-day deductions from pay, the propriety of CLS' exempt classification and any deductions made to the minimum guaranteed salary would require an individualized analysis, such that class-wide disposition is inappropriate.

Alternatively, to the extent this Court believes conditional certification is warranted, the proposed collective action must be narrowed from "All Right of Way Agents" to only those CLS ROW Agents that held the same title as Plaintiff—namely, ROW Supervisor—and worked in

Pennsylvania during the potential statute of limitations period. Further, CLS challenges aspects of Plaintiff's proposed notice and consent forms and methods of notice and asks that this Court modify any notice to be issued in accordance with its objections.

## II.     BACKGROUND

**A.  Plaintiff's counsel previously sought, and was denied, a nationwide collective action.**

On July 24, 2020, Plaintiff's counsel began its crusade to certify a FLSA collective action of CLS' "Right of Way Agents" by initiating *Cosmo Clark v. Contract Land Staff, LLC*, C.A. No. 4:20-cv-02620, in the United States District Court for the Southern District of Texas ("*Clark*"). (*See* Doc. 9-1.) As this Court is aware, *Clark* was fronted by a Senior ROW Acquisition Agent who sought to certify a nationwide FLSA collective action of "**All Right of Way Agents who worked for, or on behalf of, CLS who were paid a day rate with no overtime in the past three years**." (Doc. 9-4 at § 1.) In the Motion for Conditional Certification, and subsequent briefing, the plaintiff in *Clark* argued that conditional certification was appropriate because, based on an allegedly unlawful "day-rate plan," the putative collective action members "were subject to the same policy or plan and thus are similarly situated." (*Id*. at § 3.3.) Notably, by the completion of briefing on the motion, Plaintiff's counsel had conducted—and relied upon—three depositions of relevant CLS employees, including CLS' corporate representative, Senior Vice President of HR, Lesley Buentello, and a CLS Regional Manager, Brad Irby. (*See* Buentello Dep. and Irby Dep., attached as Exhibit 1 and Exhibit 2, respectively.)

On August 2, 2021, United States Magistrate Judge Frances Stacy issued her Memorandum and Recommendation on the motion, recommending that plaintiff's motion be denied ("*Clark* M&R"). (Doc. 9-9.) While recognizing the application of the Fifth Circuit's then recent *Swales* decision, Magistrate Judge Stacy also noted that "*Swales* does not provide a test or standard to be

used for determining whether a proposed class of workers is similarly situated." (*Id.* at 5.) Instead, the *Clark* M&R applied "the three broad propositions from *Swales*" and, based on a review of all the evidence then available, concluded that the proposed class of ROW Agents was not "'similarly situated' for purposes of § 216(b) notice." (*Id.*) More specifically, the *Clark* M&R found—in relevant part—that:

- The plaintiffs "fail[ed] to provide *any evidence* that there is a cohesive group of CLS workers known merely as 'Right of Way Agents.'" (*Id.* (emphasis added).)

- While "'day rate' compensation schemes have . . . been found to create a 'similarly situated group of employees, CLS maintains that Clark, and those he seeks to provide notice to, were paid a minimum guaranteed salary." (*Id.* at 6.) Thus, with respect to this "threshold issue," the plaintiffs had not shown that the case was "susceptible to a common resolution on a class-wide basis." (*Id.*)

- Analysis of the exemption asserted by CLS would require "individualized inquiry and assessment to determine whether the administrative exemption applied to the other CLS workers to whom Clark seeks to send notice." (*Id.* at 7.)

- CLS "has several classifications of Right of Way Agents, who have different roles and perform different job duties depending upon the client and project to which they are assigned." (*Id.* at 9.)

United States District Judge Alfred H. Bennett, after conducting a de novo review, adopted the *Clark* M&R in full and denied collective action certification under the FLSA.[1] (Doc. 9-10.)

**B.  Plaintiff's Motion relies on the same failed allegations as *Clark*.**

Shortly after the resolution of *Clark* (and the two subsequently filed lawsuits)—in fact, while the parties were still completing the terms of a settlement—Plaintiff's counsel recruited Plaintiff and filed her Original Collective & Class Action Complaint before this Court. (Doc. 1.) Plaintiff seeks to conditionally certify a nebulous collective action of ROW Agents *identical* to the putative collective action in *Clark*: "**All Right of Way Agents who worked for, or on behalf of,**

---

[1] During the pendency of the *Clark* Motion for Conditional Certification, Plaintiff's counsel initiated two additional collective action and/or class action lawsuits asserting nearly identical allegations under the FLSA and Pennsylvania state law in separate venues as *Clark*—one against CLS and one against CLS' client.

**CLS who were paid a day rate with no overtime in the past three years.**" (Doc. 59 at 1.) But despite being afforded discovery and guidance from the Texas court regarding the flaws in her collective action claims, Plaintiff's Motion relies on the **same allegations** as *Clark*.

Plaintiff argues that "conditional certification is appropriate where the plaintiff properly alleged that the putative class members were together the victims of a single decision, policy, or plan that ***violated the law***." (Doc. 60 at 5 (emphasis added).) Specifically, Plaintiff alleges that "CLS's day rate pay scheme failed to compensate its Day-Rate ROW Agents for overtime worked, making Weinmann and all Day-Rate ROW Agents paid under this plan similarly situated." (*Id.* at 6.) Plaintiff purports to have provided "ample evidence" to satisfy the requisite showing for conditional certification, when in reality Plaintiff relies on two primary evidentiary sources. (*Id.*) First, Plaintiff presents the Employee Placement Forms of Opt-In Plaintiffs Jennifer Crager ("Crager"), Michael Laird Scheer ("Scheer"), and Christian Hollenkamp ("Hollenkamp"), which reflect the terms of their project-specific employment with CLS. (Docs. 60-3, 60-4, 60-5.) Second, Plaintiff cites to the nearly identical declarations of Plaintiff and Opt-In Plaintiffs Crager, Brittany Minogue, and Scheer (collectively, "Declarants"), which Plaintiff concludes shows that "Day-Rate ROW Agents are similarly situated." (Doc. 60 at 7; *see also* Docs. 60-6, 60-7, 60-8, 60-9.)

## C. CLS' "ROW Agents" have distinct job titles and duties.

CLS employs two distinct categories of employees: acquisition agents and title agents. (*See* Declaration of Lesley Buentello at ¶ 5, attached as <u>Exhibit 3</u>; Declaration of Annalyn Gill at ¶ 4, attached as <u>Exhibit 7</u>; Declaration of Phil Pack at ¶ 4, attached as <u>Exhibit 8</u>.) CLS' acquisition agents are divided into Right-of-Way ("ROW") Agents, Sr. ROW Agents, and Lead ROW Agents (collectively, "ROW Agents"). (Ex. 3 at ¶ 5.) CLS' title agents are divided into ROW Title Agents, Sr. Title Agents, and Lead Title Agents. (*Id.*) Notably, CLS has only one position of which the

title is merely "Right-of-Way Agent," and the term "ROW Agent" only refers to acquisition agents—not title agents. (*See* Ex. 3 at ¶ 4; Declaration of Jerod Mickelson at ¶ 4, attached as Exhibit 4.) Thus, to the extent Plaintiff hopes to encompass several distinct groups of CLS employees in her putative class, she misuses the term "Right of Way Agents." (*See* Ex. 3 at ¶ 10.)

Title agents and acquisition agents have very different job duties and responsibilities, which vary further based on the particular client or project on which CLS staffs them. (Ex. 2 at 6:3-6:21, 34:12-34:16, 35:11-35:15; Ex. 3 at ¶ 6; Ex. 4 at ¶ 4; Ex. 8 at ¶ 5.) Title agents do not usually interact with landowners, but instead perform all aspects of land title research, which includes—among other things—the review, retrieval, and analysis of real estate documents to discern a property's legal descriptions, ownership, and restrictions and the preparation of chain of title and limited title certificates. (Ex. 2 at 6:3-6:21, 35:11-35:15; Ex. 4 at ¶ 6; Ex. 7 at ¶ 5.) In contrast, acquisition agents' roles demand that they develop relationships with landowners, communicating and negotiating on CLS' client's behalf to find solutions related to the client's projects and their association with a landowner's real property. (Ex. 4 at ¶ 5; Declaration of Walter DeLap at ¶ 6, attached as Exhibit 5; Declaration of Brian Quinlan at ¶ 5, attached as Exhibit 6; Ex. 7 at ¶ 6.) ROW Agents' duties include identifying and contacting landowners regarding property rights (such as permission to do a survey or obtain an easement), handling negotiations, analyzing compromises, estimating areas of potential damages to the property owner, serving as a liaison between the landowner and CLS' client, and preparing lawsuit packages for condemnation. (*See* Ex. 1 at 28:9-17; Ex. 2 at 34:12-34:16; Ex. 4 at ¶ 5; Ex. 5 at ¶ 6; Ex. 6 at ¶ 5.)

Title agents and ROW Agents are further distinguished based on experience within their sects. (*See* Ex. 3 at ¶ 7; Ex. 4 at ¶ 7; Ex. 7 at ¶ 7.) Acquisition agents with approximately two or more years of experience hold the title of "Sr. ROW Agents," as opposed to "ROW Agents" who

have less than two years of experience. (*Id.*) Sr. ROW Agents are assigned more challenging or difficult tasks in light of their experience. (*Id.*) Additionally, certain projects may employ a "Lead ROW Agent," typically an acquisition agent with three or more years of experience, based on their ability to handle more complex landowners and act as a resource for ROW Agents and Sr. ROW Agents. (*See* Ex. 1 at 25:7-14; 69:10-22; Ex. 3 at ¶ 7; Ex. 8 at ¶ 16.) Finally, a ROW Supervisor oversees acquisition agents on the project and is responsible for supervisory tasks such as making recommendations as to staffing decisions, discipline, and otherwise managing the day-to-day activities of ROW Agents. (Ex. 3 at ¶ 8; Ex. 4 at ¶¶ 17-19; Ex. 5 at ¶ 7; Ex. 6 at ¶ 6.) In performing their supervisory role, ROW Supervisors are afforded a significant amount of discretion, and may choose to allow Sr. ROW Agents under them substantial freedom while closely overseeing less experienced ROW Agents. (Ex. 4 at ¶ 18; Ex. 5 at ¶ 8; Ex. 6 at ¶ 7.)

**D. ROW Agents' day-to-day job duties also vary project to project.**

CLS hires ROW Agents to provide services on particular projects for CLS' clients. (*See generally* Ex. 4 at ¶¶ 3, 8; Ex. 5 at ¶¶ 3-5, 9, 20; Ex. 6 at ¶¶ 3-6; Ex. 7 at ¶¶ 3, 12, 17; Ex. 8 at ¶¶ 3, 11-17; Declaration of Shawn Reynolds at ¶¶ 3-10, 16, attached as <u>Exhibit 9</u>.) ROW Agents' job duties and tasks (and *how* they perform their work) differ depending on the type of project, the specific client, the stage of the project, the size of the project, the number of CLS managers supervising the project and their management styles, and whether the ROW agent is managed directly by a CLS manager or the client. (*See generally* Ex. 4 at ¶¶ 8-13; Ex. 5 at ¶¶ 9-11, 13; Ex. 6 at ¶ 12; Ex. 7 at ¶¶ 10-11; Ex. 8 at ¶¶ 5-9.) Because each project presents unique duties, hours, and expectations, ROW Agents' exercise of discretion, independent thinking, and judgment in performing their job varies from project to project in accordance with client and CLS preferences. (Ex. 4 at ¶ 10; Ex. 6 at ¶ 8; Ex. 7 at ¶¶ 8-11, 13; Ex. 8 at ¶¶ 5-7.) For example, the relevant terms

negotiated by an acquisition agent will change based on the type of project and rights involved. (*See, e.g.,* Ex. 5 at ¶ 11; Ex. 6 at ¶¶ 9-10; Ex. 7 at ¶14.) In conducting negotiations, some CLS clients will afford the ROW Agent significant leeway in negotiations, while other clients have stricter parameters governing negotiations by ROW Agents. (Ex. 4 at ¶ 10; Ex. 6 at ¶ 5; Ex. 7 at ¶¶ 18-21; Ex. 8 at ¶¶ 7-8.) Similarly, clients' preferences with respect to keeping timesheets or the level of detail necessary when recording work activity will differ depending on the client, as well as the management preferences and the agent's own recordkeeping style. (Ex. 3 at ¶ 9.) CLS project managers and ROW Supervisors likewise vary in terms of the level of authority allowed their ROW Agents on a project, flexibility with time off, and reporting hours. (Ex. 4 at ¶ 19; Ex. 5 at ¶ 12; Ex. 6 at ¶ 11; Ex. 7 at ¶ 15.) Thus, no one project is exactly the same for each ROW Agent with respect to his or her duties, hours worked, management oversight, and expectations. (Ex. 4 at ¶ 13; Ex. 7 at ¶¶ 10, 16; Ex. 8 at ¶¶ 6, 10.)

**E.  CLS pays ROW Agents on a salary basis and classifies them as exempt.**

Identical to the key language in *Clark* warranting denial of collective action certification, each Employee Placement Form presented by Plaintiff contains the following language:

*\*You will be paid the applicable Day Rate for each full day of work, subject to normal withholdings.  The Day Rate will be paid in ¼ day increments, therefore, for example, you will receive ¼ of the Day Rate for ¼ day's work.  For each week you perform any work, you will be paid the greater of (a) time actually worked in ¼ day increment at your Day Rate or (b) a guaranteed minimum salary that will be approximately 75% of your usual earnings at the assigned Day Rate for your normal scheduled workweek. The only exception to the above will be at the beginning and end of projects.*

("Minimum Salary Guarantee") (*See* Doc. 60-3, 60-4, 60-5; Ex. 3 at ¶ 15; Ex. 5 at ¶¶ 14-16; Ex. 6 at ¶¶ 14; Ex. 9 at ¶ 11-14.) Indeed, all Employee Placement Forms issued by CLS include the above language, advising the ROW Agents that CLS' compensation method consists of a Minimum Salary Guarantee, with the opportunity to earn more based on the amount worked. (*See* Docs. 60-3, 60-4, 60-5; Ex. 3 at ¶ 14.) CLS compensates its ROW Agents on a salary basis semi-monthly and, given the typical days and rates applicable for client projects, ROW Agents are

guaranteed a minimum salary that amounts to more than $684 per week. (*See* Ex. 3 at ¶¶ 12, 16-17; Ex. 5 at ¶¶ 17-18; Ex. 6 at ¶¶ 16-17; Ex. 8 at ¶ 18.) Further, as explained above, ROW Agents are able to exercise discretion and independent judgment in performing their job duties and perform work directly related to the general business operations of CLS' clients. (Ex. 4 at ¶ 10; Ex. 6 at ¶ 8; Ex. 7 at ¶¶ 8-11; Ex. 8 at ¶¶ 7-8.) Separately, ROW Supervisors direct the work of ROW Agents, exercise significant discretion in training and managing their direct reports, and make recommendations as to employment actions. (Ex. 4 at ¶ 18; Ex. 5 at ¶ 8; Ex. 6 at ¶ 7.) Accordingly, CLS classifies its ROW Agents and ROW Supervisors as exempt under the FLSA. (Ex. 3 at ¶ 15; Ex. 5 at ¶ 19; Ex. 6 at ¶ 18; Ex. 9 at ¶ 15.)

**F.  Plaintiff and Opt-In Plaintiffs evidence the distinctions among the various "Right of Way Agent" positions.**

Plaintiff generally asserts that she worked for CLS as a "Right of Way Agent" from approximately 2010 until October 2019 in Illinois and Pennsylvania. (Doc. 60-6 at ¶ 2.) However, during the relevant time period, Plaintiff worked exclusively in Pennsylvania on one client project. (Ex. 3 at ¶ 11.) Specifically, between December 26, 2017 and October 25, 2019, Plaintiff was employed as a ROW Supervisor on a utilities project for Pennsylvania Power Light Electric Utilities Corporation (the "PPL Project"). (Ex. 3 at ¶ 4, 11; Ex. 4 at ¶¶ 14-15.) On the PPL Project, Plaintiff was responsible for supervising a team of ROW Agents who negotiated with landowners for purposes of acquiring certain property rights. (Ex. 4 at ¶¶ 15-16.) In her role as ROW Supervisor, Plaintiff was responsible for training and coaching the ROW Agents under her, as well as tracking their productivity, creating plans for upcoming projects, and regularly meeting and providing updates to the client. (*Id*. at ¶¶ 17-18; 23.) Plaintiff was further tasked with generally overseeing activities of all project personnel, making recommendations regarding employment decisions, disciplining underperforming personnel, and providing guidance regarding billing,

timekeeping, and compensation. (*Id*.) Plaintiff was scheduled to work six days per week on the PPL Project, compared to the five days per week that the ROW Agents were scheduled to work. (*Id*. at ¶ 20.) Given Plaintiff's day rate for this project of $345 per day and the minimum salary guarantee, Plaintiff was assured—and received—at least $1,552.50 per week. (Ex. 3 at ¶ 12; Ex. 4 at ¶ 21-22.)

Since the filing of this suit, seven former CLS employees—Crager, Vaughn Deen, Blair Ebersold, Hollenkamp, Bridgett Minogue, Brittany Minogue, and Douglas Sexton—and one current CLS employee—Scheer—have filed consents to join the lawsuit. (Ex. 3 at ¶ 13.) The Opt-In Plaintiffs held the positions of ROW Supervisor, Sr. ROW Agent, Sr. Land Representative, and Lead ROW Agent and worked in nine different states and on six different projects for CLS clients. (Ex. 3 at ¶ 13.) Importantly, *none* of the Opt-In Plaintiffs worked for CLS (or maintain an address) in Pennsylvania, *none* of the Opt-In Plaintiffs worked for the same client as Plaintiff, and *only one* Opt-In Plaintiff—Crager—was employed by CLS as ROW Supervisor like Plaintiff. (*Id*.) Further, each of the projects on which the Opt-In Plaintiffs were staffed involved unique issues that impacted the CLS ROW Agents' roles. (*See generally* Ex. 7 at ¶ 22; Ex. 5 at ¶¶ 10-11.) Further, each Opt-In Plaintiff's duties and the level of discretion and supervision afforded each varied from project to project. (*See generally* Ex. 7 at ¶¶ 17, 19-21; Ex. 8 at ¶¶ 13-14.) Thus, based on this small sampling, it is clear that a collective action of "All Right-of-Way Agents" would encompass significantly varied and distinguishable group of CLS employees.

### III.   ARGUMENT & AUTHORITIES

**A. Given the *Clark* decision, conditional certification is futile and—at the very least—demands the application of an intermediate standard.**

Plaintiff's counsel's second attempt to seek nationwide collective action certification under the FLSA relies on the same doomed legal theories as those in *Clark* and, thus, must likewise fail.

"Put simply, the old adage that 'if at first you don't succeed, try again' does not apply to litigation in federal court." *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-CV-01571, 2017 WL 1105236, at *1 (M.D. Pa. Mar. 24, 2017). In *Sloane*, the court recognized that the case before it was the second attempt by the same counsel to seek conditional certification of a FLSA collective action. *Id*. Specifically, counsel for the plaintiff had previously failed to obtain nationwide collective action certification under the FLSA in the United States District Court for the Southern District of Ohio, but "armed with a new class representative but the same old theory," filed a "strikingly similar complaint" in the United States District Court for the Middle District of Pennsylvania. *Id*. at *1, 3. Looking to the decision in the previously filed action, the *Sloane* court determined that "prevailing legal and equitable principles demand that this Court reject Plaintiff's second-chance attempt to certify a nationwide collective action." *Id*. at *7. The same is true here.[2]

### 1. Given discovery conducted in *Clark*, the intermediate standard should apply.

Importantly, Plaintiff's only argument to distinguish *Clark* is that, "[u]nlike Clark, this Court must utilize the two-stage process, with the lenient standard for conditional certification." (Doc. 60 at ¶ 1.) CLS agrees that, generally, the Third Circuit has embraced a two-step approach and that the first, "conditional certification" stage, typically employs a "modest factual showing". *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536, n.4 (3d Cir. 2012). Even under this "lenient standard," a plaintiff must nonetheless produce some evidence, "*beyond pure speculation*," of a factual nexus between the manner in which the employer's alleged policy affected her and the

---

[2] CLS acknowledges that the Court previously denied CLS' Motion to Dismiss based on the preclusive effect of the rulings in *Clark*. (Doc. 24.) Specifically, citing to *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), this Court found—in relevant part—that issue preclusion was not appropriate with respect to the FLSA collective action claims because Weinmann was not a party to *Clark* and the court in *Clark* applied a different legal standard. (*Id*.) However, while *preclusion* could not prevent Plaintiff from seeking conditional certification, *precedent* can lead to the denial of collective action certification. Indeed, in *Smith*, the Supreme Court recognized that "our legal system generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs." *Smith,* 564 U.S. at 317. Accordingly, this Court can—and should—look to *Clark* to inform its decision on Plaintiff's Motion in this matter.

manner in which it affected other employees. *Id.* (emphasis added). While CLS maintains that Plaintiff has failed to make even a "modest factual showing" to merit conditional certification, given the fact that the parties engaged in relevant discovery in *Clark* and have exchanged pertinent information for the past three years, an intermediate standard of review should be applied. *Sloane,* 2017 WL 1105236, at *5 ("[A]lthough district courts apply a less searching standard initially, once discovery is had, any presumption of leniency recedes, and the plaintiff is held to a more demanding burden.").

Indeed, several district courts within the Third Circuit—as well as district courts outside of this Circuit—"have applied an intermediate standard of review for the first step of this certification process when the parties have already engaged in some measure of discovery." *Henkel v. Highgate Hotels, LP*, No. 3:15-CV-01435, 2021 WL 2550203, at *6 (M.D. Pa. June 22, 2021) (collecting cases). The application of an intermediate standard in cases where discovery has been exchanged is consistent with the Third Circuit's instructions in *Zavala* because "the crux of that decision is that the primary factor responsible for tightening the standard at certification is the existence of meaningful discovery." *Sloane*, 2017 WL 1105236, at *8; *see also Swank v. Wal-Mart Stores, Inc.*, No. 2:13-CV-1185, 2018 WL 2684102, at *9 (W.D. Pa. June 5, 2018) ("[T]he standard at the notice stage is lenient precisely because, *in the usual case*, the record is not yet sufficiently developed to hold the plaintiffs to the more difficult standard they ultimately must satisfy to proceed as a collective action." (emphasis added)). The application of "a more searching standard is particularly uncontroversial where nearly the same exact counsel and parties have already exchanged discovery in two strikingly similar actions." *Sloan*, 2017 WL 1105236, at *8.

Here, Plaintiff's counsel has sought discovery and otherwise gathered relevant information since initiating *Clark* nearly three years ago. Specifically, over the course of the *Clark* litigation,

the parties exchanged written discovery, produced documents, and conducted five depositions. *See, e.g., Bunyan v. Spectrum Brands, Inc.*, No. 07-CV-0089-MJR, 2008 WL 2959932, at *4 (S.D. Ill. July 31, 2008) (proceeding under an intermediate approach where the parties had exchanged interrogatories, conducted depositions, exchanged documents and the plaintiffs acquired a list of other putative class members over the course of nearly ten months). Notably, Plaintiff's counsel deposed CLS' Vice President of HR, Lesley Buentello, who served—and will continue to serve—as CLS' corporate representative. (*See generally* Ex. 1.) In *Clark*, Ms. Buentello attested to, among other things, CLS' Minimum Salary Guarantee and classification of ROW Agents as exempt. (*See id.*) Additionally, Plaintiff's counsel deposed two CLS supervisors, including Brad Irby, who spoke, generally, to the distinct duties and discretion afforded the various classes of CLS Right of Way Agents. (*See generally* Ex. 2.) Further, over the course of mediation attempts and settlement negotiations, CLS provided additional information to Plaintiff's counsel, including anonymized timesheets and pay records for several putative class members. Importantly, because *Clark* involved "common claims, common facts, and common law" to the instant matter, the evidence from *Clark*—which Plaintiff's counsel used for purposes of seeking collective action certification under the heightened *Swales* standard—is both relevant and indicative of any further discovery that may be sought here. *See Sloane*, 2017 WL 1105236, at *8.

Accordingly, in light of the discovery exchanged between the parties' counsel—as well as the amount of evidence presented here—this Court should "approach the conditional certification question with an eye toward final certification, and [ ] consider *all of the evidence* to determine whether the proposed collective plaintiffs are sufficiently similarly situated to justify facilitating notice and proceeding to the final certification analysis." *Swank*, 2018 WL 2684102, at *10 (emphasis added). Plaintiff, therefore, must make "some factual showing that the similarly-situated

requirement is satisfied, as a result of the discovery as measured against the original allegations and defenses." *Sloane*, 2017 WL 1105236, at \*10. In other words, under the intermediate standard, this Court must consider: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." *Skaggs v. Gabriel Bros., Inc.,* No. 1:19-CV-02032, 2021 WL 254113, at \*9 (M.D. Pa. Jan. 26, 2021). As shown below, Plaintiff has not satisfied her burden under this intermediate standard and her Motion should be denied.

### 2. The reasoning in *Clark* shows certification should ultimately be denied.

The *Clark* holding foreshadows the ultimate result in this matter: FLSA collective action certification will be denied. Thus, even if the Court were to find that Plaintiff has satisfied the more lenient standard—which CLS still contends she does not—to grant conditional certification would be inefficient and inequitable given the inevitable outcome. *Sloane,* 2017 WL 1105236, at \*8 ("Further, it would be an entirely inefficient use of resources for this Court to conditionally certify a collective action, only to double-back because the bulk of the discovery it already considered has cast an ominous shadow upon the propriety of the ultimate merits.").

First, Plaintiff here, as in *Clark*, does not—and cannot—show that CLS implemented a violative "day rate scheme." (*See* Doc. 9-9 at 6 (holding "that threshold issue [of whether CLS ROW Agents are paid on a salary basis], has not been shown . . . to be susceptible to a common resolution on a class-wide basis.").) Rather, Plaintiff's own evidence reflects CLS' Minimum Salary Guarantee policy, which complies with the FLSA. (Docs. 60-3, 60-4, 60-5.) Second, while Plaintiff avoids any substantive discussion of the various roles and duties of the "Right of Way Agents," the available evidence—and any additional evidence exchanged in discovery—will show that the putative collective action members are not similarly situated. (Doc. 9-9 at 5 ("The plaintiffs

"fail[ed] to provide *any evidence* that there is a cohesive group of CLS workers known merely as 'Right of Way Agents.'") and 9 (CLS "has several classifications of Right of Way Agents, who have different roles and perform different job duties depending upon the client and project to which they are assigned.").) Finally, like the *Clark* court, this Court will undoubtedly find that with respect to determining whether each employee was properly classified as exempt—including, for example, whether the ROW Agents were paid on a salary basis and the amount of discretion each was afforded in their role—will require an individualized inquiry and defeat the very purpose of certification. (Doc. 9-9 at 7 (analysis of the administrative exemption asserted by CLS would require "individualized inquiry and assessment to determine whether the administrative exemption applied to the other CLS workers to whom Clark seeks to send notice.").)

Regardless of venue or the applicable standard, Plaintiff's recycled claims against CLS are simply not suited for class-wide resolution. To allow conditional certification—regardless of the inevitable outcome—would be a waste of judicial resources and only present the opportunity for abuse of the collective-action device. *See, e.g., Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020) (acknowledging the dangers of collective actions include the opportunity to expand the litigation and increase pressure to settle, "no matter the action's merits" and that notice "may become indistinguishable from solicitation of claims"). District courts have always been afforded *discretion* to reserve the implementation of 29 U.S.C. § 216(b) notice for "*appropriate cases*." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (emphasis added). Accordingly, based on the *Clark* holdings, judicial economy, and considering all available evidence, this Court should exercise its discretion and deny Plaintiff's request for conditional certification.

## B.  Plaintiff fails to satisfy her burden to merit conditional certification.

As previewed above, Plaintiff has not—and cannot—carry her burden to make some factual showing that conditional certification of a collective action consisting of "All Right of Way

Agents" employed by CLS nationwide is warranted. *Sloane*, 2017 WL 1105236, at \*10. Indeed, with an "eye toward final certification," facilitating notice and continuing to the final stage certification analysis is not justified because CLS pays its ROW Agents on a salary basis and CLS' available defenses (and Plaintiff's anticipated arguments) demand individualized inquiries not suitable for class-wide disposition. *Swank*, 2018 WL 2684102, at \*10.

1. **There is no reasonable basis for Plaintiff's allegations of FLSA violations because ROW Agents are paid on a salary basis.**

Plaintiff's Motion is based on the insupportable assertion that "Weinmann and the Day-Rate ROW Agents . . . were paid a day-rate without overtime compensation." (Doc. 60 at 1.) However, Plaintiff's own evidence contradicts this allegation, as all three Employee Placement Forms submitted by Plaintiff plainly provide for a minimum guaranteed salary. (Doc. 60-3, 60-4, 60-5.) As Plaintiff acknowledges, Plaintiff must *show* that the putative class members were victims of "a single decision, policy, or plan that *violated* the law." (Doc. 60 at 5 (emphasis added)); *cf. Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.,* No. CV 15-482, 2016 WL 3077936, at \*5-7 (E.D. Pa. June 1, 2016) (reviewing, at the notice stage, statutory provisions, DOL opinion letters, declarations, new hire forms, and offer letters to determine whether alleged policy or practice was unlawful). Thus, the very premise of Plaintiff's Motion is flawed, and Plaintiff cannot satisfy even the *lenient* burden for conditional certification because CLS pays its ROW Agents on a salary basis, not a day rate, consistent with the FLSA. *See* 29 C.F.R. § 541.604(b).

i. *CLS' Minimum Salary Guarantee satisfies 29 C.F.R. § 541.604(b).*

"An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship

exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b). The U.S. Supreme Court in *Helix Energy Solutions Group, Inc. v. Hewitt* recently affirmed that the FLSA's salary basis test is satisfied if the requirements of 29 C.F.R. § 541.604(b) are met. 143 S. Ct. 677, 684 (2023) (holding that daily-rate workers are paid on a salary basis through the test set out in 29 C.F.R. § 541.604(b), and that the defendant admittedly did not satisfy its conditions). A "reasonable relationship" exists when the weekly guarantee is "roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek" 29 C.F.R. § 541.604(b). Generally, a ratio of 1.5 to 1 of actual earnings to guaranteed weekly salary is "roughly equivalent" and satisfies the reasonable relationship condition. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-25.

Here, CLS satisfies the requisite conditions of 29 C.F.R § 541.604(b) and pays its ROW Agents on a salary basis. CLS' compensation scheme is outlined in every Employee Placement Form, which is provided at the outset of a ROW Agent's employment with respect to a client project. (*See* Ex. 3 at ¶ 14.) As stated in the forms, CLS expressly provides a "guaranteed minimum salary that will be approximately 75% of [the ROW Agent's] usual earnings at the assigned day rate for [the ROW Agent's] normal scheduled workweek." (Doc. 60-3, 60-4, 60-5; *see also* Ex. 3 at ¶¶ 12, 14, 15.) The minimum salary is guaranteed "for each week [a ROW Agent] perform[s] *any* work." (Doc. 60-3, 60-4, 60-5; *see also* Ex. 3 at ¶ 15.) Further, the guaranteed minimum salary may only be supplanted if the ROW Agent's time worked results in a greater amount. (Doc. 60-3, 60-4, 60-5.) Thus, before ROW Agents start work on any CLS client project, they are able to calculate the minimum guaranteed salary by multiplying the project's daily rate by the proposed number of days, as stated in the Employee Placement Form, and then multiply by .75 to determine the minimum guaranteed salary. (Ex. 5 at ¶¶ 14-16; Ex. 6 at ¶¶ 13-14.) Given the typical pay rates

and number of work days per week, which vary based on the project, ROW Agents are guaranteed the requisite minimum salary level for the applicable exemptions—and such amount (being 75%) bears a reasonable relationship to the usual earnings.[3] (*See* Ex. 3 at ¶ 15); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-25. Accordingly, CLS paid Plaintiff and other ROW Agents on a salary basis in accordance with the FLSA. (*See, e.g.,* Ex. 6 at ¶ 17.)

> ### ii. *Plaintiff does not—and cannot—refute that CLS' compensation policy for ROW Agents is a minimum guaranteed salary.*

Notably, despite this guarantee's obvious inclusion in the Employee Placement Forms, Plaintiff does not even acknowledge the Minimum Salary Guarantee at any point in the Motion. Instead, Plaintiff repeatedly insists she and other ROW Agents were paid on a day rate only—and relies on distinguishable cases to allege that the ROW Agents were "together victims of a single decision, policy, or plan." (Doc. 60 at ¶ 4.) *All* of the cases that Plaintiff relies on as support for her argument that courts "routinely certify cases based on a uniform pay practice alone, such as a day rate" were decided before the Supreme Court's *Helix* decision, do not involve express minimum salary guarantees like that of CLS, and do not discuss the requirements of 29 C.F.R. § 541.604(b). (Doc. 60 at § C.4.) For example, in *Kolasa v. BOS Solutions, Inc.*—a case cited throughout the Motion—the court expressly found that "Kolasa and putative class members *were never guaranteed a certain amount of money for the weeks worked*." *Kolasa v. BOS Sols., Inc.*, No. CV 17-1087, 2018 WL 3370675, at *2 (W.D. Pa. May 10, 2018), *report and recommendation adopted*, No. CV 17-1087, 2018 WL 3361269 (W.D. Pa. July 10, 2018) (emphasis added). Here,

---

[3] Taking Scheer's Employee Placement Form, for example, Scheer's minimum guaranteed salary would be $1,087.50 for any week in which Scheer performed any work on that particular project (e.g., $290 x 5 days x .75). (*See* Doc. 60-5.) Despite having a pay rate on the low end of what a ROW Agent can typically expect, the minimum guaranteed salary far exceeds the requisite minimum salary level for any relevant exemption. (*See* Ex. 3 at ¶ 15.)

in contrast, the Employee Placement Forms show that CLS' policy *is* to pay its ROW Agents a minimum guaranteed salary. (*See* Doc. 60-3, 60-4, 60-5; Ex. 3 at ¶¶ 12, 14, 15.)

Further, under the intermediate standard, "[g]eneral allegations of an overarching employer policy are insufficient, and plaintiffs are required to produce substantial evidence of a single decision, policy, or plan." *Sloane*, 2017 WL 1105236, at *11 (citing *Martin v. Citizens Fin. Group, Inc.*, 2013 WL 1234081, at *3 (E.D. Pa. Mar. 27, 2013) (considering a motion to decertify, the court held that "[w]here an employer maintains a formal policy of lawful compensation, plaintiffs must present substantial evidence that the employer, in fact, shirked its FLSA responsibilities.") (internal citations omitted).)[4] Plaintiff's only "evidence" of a common, unlawful policy are the identical and unsubstantiated assertions of the Declarants. (*See* Doc. 60-6 and 60-7 at ¶ 13; Doc. 60-8 and 60-9 at ¶ 14); *see Valte v. United States*, 155 Fed. Cl. 561, 575 (2021) (noting that "courts have denied conditional certification in similar circumstances, when plaintiffs only provided five 'virtually identical' affidavits which contained primarily conclusory allegations unsupported by any factual assertions demonstrating the basis of the affiants' knowledge" (internal quotations omitted).) Specifically, each Declarants alleges, verbatim, that:

> Based on my personal knowledge drawn from *my experience and observations* working for CLS, conversations with other CLS Right of Way Agents, and my familiarity with CLS's payroll practices and policies, I know that other Right of Way Agents were subjected to the same day rate pay practice, regardless of actual job title or rate of pay, or any other individualized factor.

---

[4] Even under the lenient standard, this Court should not "review Plaintiff's evidence in a vacuum," but rather, "in light of the evidence submitted by Defendant[ ]." *Hall v. Guardsmark, LLC*, No. CIV.A. 11-213, 2012 WL 3580086, at *6 (W.D. Pa. Aug. 17, 2012). Importantly, Plaintiff cannot simply rely on "a nominal number of affidavits that ma[ke] broad allegations about the treatment of other employees." *Cf. In Re: Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, No. 2:07-CV-01687-JFC, 2010 WL 3447783, at *20 (W.D. Pa. Aug. 13, 2010). "In spite of the modest evidentiary standard . . . courts have not hesitated to deny conditional certification when evidence is lacking." *Bramble v. Wal-Mart Stores, Inc.*, No. CIV.A.09-4932, 2011 WL 1389510, at *5 (E.D. Pa. Apr. 12, 2011) (noting that the plaintiffs "do not point to a job description that says that APCs are required to perform non-exempt tasks," the court found the plaintiffs did "not provide even modest evidence beyond their own speculation" that the purported class was similarly situated and denied conditional certification).

(*See, e.g.,* Doc. 60-6 at ¶ 13 (emphasis added).) This general statement is unsupported and, rather, expressly contradicted by the Employee Placement Forms. *Valte*, 155 Fed. Cl. at 575 ("Declarations offering no specific support for the allegations of a violation (e.g., names, dates, places, types of unlawful action, etc.) are insufficient to justify FLSA notice."). Further, the statement relies on hearsay (i.e., "conversations") and, to the extent it purports to include ROW Agents who were not on the same project at the same time in the same role as each Declarant (i.e., their "experience and observations") is based on speculation. *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. CIV. A. 09-CV-379, 2009 WL 1515175, at *3 (W.D. Pa. June 1, 2009) (finding the information regarding "other employees" constituted inadmissible hearsay and would not be considered in the court's analysis); (*see also* Ex. 5 at ¶ 13 ("I would not have personal knowledge of the actual job duties, work habits or hours worked by ROW Agents working on other CLS client projects."); Ex. 6 at ¶ 12 ("I had almost no interaction with ROW Agents working for other CLS clients or on other projects.").) Because "[o]nly admissible evidence may be considered in deciding a motion for conditional class certification under 29 U.S.C. § 216(b) of the FLSA," these statements of the Declarants should be struck and, when set aside, denial of Plaintiff's Motion is warranted for failure to provide evidence of an unlawful common policy by CLS that makes ROW Agents similarly situated. *Id*.

### 2. The need for individualized inquiries defies certification.

Plaintiff hopes to avoid any true discussion of the "differences among proposed class members and the potential impact of FLSA exemptions." (Doc. 60 at 6.) However, under the intermediate standard, these issues are particularly relevant to the Court's analysis. *Skaggs,* 2021 WL 254113, at *9. Here, the proper classification of ROW Agents as exempt—including an analysis of the varied roles held by the putative class members—and the actual calculation of the

salary payment—especially considering deductions that may be made under the FLSA—clearly show this case would require individualized inquiries and is not suitable for collective treatment.

### i. ROW Agents are properly classified as exempt and necessitate individualized inquiries into the duties and discretion of each employee.

In light of the Minimum Salary Guarantee, the amount of discretion afforded, and the independent judgment exercised by ROW Agents in supporting the general business operations of CLS' clients, CLS properly classifies its ROW Agents as exempt under the administrative exemption.[5] *See* 29 C.F.R. § 541.200(a); (*see supra* § II.C-F).[6] Separately, CLS' ROW Supervisors, like Weinmann, meet the FLSA's executive exemption. *See* 29 C.F.R. § 541.100, *et seq*. Moreover, the level of discretion and even the types of job duties performed by ROW Agents vary depending on the client, the project, the phase of the project, the managerial structure, and the employee's role. Accordingly, an individualized inquiry is necessary to analyze the respective roles of the ROW Agents and assess the appropriateness of the administrative exemption (or any other applicable exemption) as to that particular acquisition or title agent. This individualized analysis contravenes the purpose of conditional certification. Indeed, even under the lenient standard, "[m]any courts have denied conditional certification under similar circumstances where the putative collective would involve individualized inquiries regarding the plaintiffs' FLSA exemption eligibility." *See Skaggs,* 2021 WL 254113, at *13 (collecting cases); *see also Moore v. PNC Bank, N.A.,* No. 2:12-CV-1135, 2013 WL 2338251, at *5 (W.D. Pa. May 29, 2013) ("[C]ourts have readily exercised discretion and denied conditional certification motions when plaintiffs have

---

[5] CLS does not waive its right to assert that other FLSA exemptions apply to its ROW Agents.

[6] When classifying its ROW Agents as exempt, CLS relied on the U.S. Department of Labor's ("DOL") June 29, 2006 opinion letter finding acquisition agents qualify for the administrative exemption, as well as the DOL's Field Operations Handbook which lists "acquisition agents" as exempt under the administrative exemption. *See* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2006-23; U.S. Dep't of Labor Field Operations Handbook 22j43(a) "Real-estate occupations," at https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch22.pdf (last visited, May 7, 2023); (*see also* Ex. 1 at 28:9-17).

relied on a common exemption status as the factor that binds a putative class together."); *Bramble v. Wal-Mart Stores, Inc.*, No. CIV.A.09-4932, 2011 WL 1389510, at *6 (E.D. Pa. Apr. 12, 2011) ("Further, courts considering claims similar to those of plaintiffs have declined to grant conditional certification where consideration of the propriety of an employer's application of an exemption to its employees would require an individualized or fact intensive analysis.").

> ### ii. *Allegations related to any payment discrepancies, likely attributable to properly-made deductions, also require an individualized analysis.*

Again, it is indisputable that CLS' compensation policy with respect to ROW Agents includes a minimum guaranteed salary. Thus, Plaintiff's allegations—and the coordinated statements by the Declarants—are perhaps more accurately read to assert that certain of the putative collective action members did not receive the minimum salary guarantee in accordance with CLS' evidenced pay practices. (*See* Doc. 60 at 7 (ROW Agents were "only paid for the days they actually worked"); Doc. 60-6 ("I never *received* a weekly guaranteed amount of money for the weeks I worked.").) But to make this determination, the Court would need to separately evaluate each putative opt-in plaintiff's timesheets, pay records, and reasons for absences—an analysis that cannot be done in any collective fashion. Moreover, since 2021, CLS has been auditing payments to ensure that ROW Agents, Sr. ROW Agents, Lead ROW Agents, and ROW Supervisors are all receiving the Minimum Salary Guarantee. (Ex. 3 at ¶¶ 16-17.)

Further, if a ROW Agent worked less than 75% of his or her normally scheduled workweek, CLS would strive to determine the reason for any missed days and make a deduction only if the missed day was for personal reasons. (*Id.*) The FLSA expressly lifts the prohibition against deductions from salary in certain circumstances, including, for example, "when an exempt employee is absent for one or more full days for personal reasons." 29 C.F.R. § 541.602(b)(1). Moreover, even improper deductions that are "either isolated or inadvertent will not result in loss

of the exemption . . . if the employer reimburses the employees for such improper deductions." 29 C.F.R. § 541.603(c). Consequently, any allegations of a failure to receive the 75% minimum guarantee would, again, require an employee-by-employee, paycheck-by-paycheck, timesheet-by-timesheet, and manager-by-manager analysis.[7] Once again, the inevitable conclusion is that this case will not proceed on a collective basis or yield a determination of similarly situated employees, thereby warranting denial of conditional certification at this stage.

**C. Alternatively, this Court can only conditionally certify a narrowed collective action.**

As it stands, Plaintiff seeks to certify a nationwide class of "All Right of Way Agents" with no title, project, or geographic limitations in the past three years. However, in the Third Circuit, it is now settled that a Pennsylvania district court *cannot* grant nationwide collective certification under the FLSA unless the employer can be subject to the general jurisdiction of Pennsylvania courts. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 372, 388 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 1001 (2023). Specifically, joining the Sixth and Eighth Circuits, the Third Circuit held in *Fischer* that when an employer is not subject to the general jurisdiction of the forum state, then any opt-in plaintiff's FLSA claim must arise out of or relate to the employer's minimum contacts with the forum state. In other words, only employees who worked for the employer within the forum state are eligible to opt-in to the FLSA collective action. *See id.* at 382-83.

This Court cannot exercise general jurisdiction over CLS because CLS is not "at home" in Pennsylvania. (*See* Ex. 3 at ¶¶ 2-3.) For purposes of analyzing general personal jurisdiction, a

---

[7] For example, this Court would be required to look at each ROW Agent's pay and time records for each pay period during the applicable statute of limitations period and determine which pay periods the class member did not receive the minimum salary guarantee as outlined in his or her Employee Placement Form. Then, the Court would have to review any evidence submitted by the parties as to the reasons for each deduction from the minimum salary guarantee. Next, the Court would have to determine whether each such deduction was permissible under the FLSA pursuant to 29 C.F.R. § 541.602(b). Finally, the Court would have to determine whether CLS has an actual practice of making improper deductions (as required by 29 C.F.R. § 541.603(a)), and, if so, the time period and group of employees for whom the exemption is lost (as required by 29 C.F.R. § 541.603(b)).

limited liability company like CLS is deemed to be "at home" in its state of incorporation and principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Based on its formation under Delaware law and principal place of business in Texas, CLS can only be subject to the general jurisdiction of the courts within Delaware or Texas.[8] Without the ability to invoke general personal jurisdiction over CLS, this Court can only entertain those claims from Plaintiff and any opt-in plaintiffs that arise out of or relate to CLS' minimum contacts with Pennsylvania. Therefore, any opt-in plaintiffs who did not work for CLS in Pennsylvania cannot demonstrate that their claims arise from CLS' minimum contacts with Pennsylvania and should be barred from joining this suit.[9]

Further, as discussed *supra* in Sections II.C-F, Plaintiff's generic reference to "Right of Way Agents" purports to include roughly 990 CLS employees, despite them having different positions, with different duties, on different projects, and under different supervisors.[10] Indeed, the

---

[8] Prior courts have construed Pennsylvania statute 42 Pa. Stat. and Cons. Stat. Ann. § 5301(a)(2)(i) and (iii) to enable Pennsylvania courts to exercise general personal jurisdiction over corporations merely for registering to do business in the state as a foreign entity. However, the Pennsylvania Supreme Court's decision in *Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542, 567 (Pa. 2021), *cert. granted*, 142 S. Ct. 2646 (2022), found this Pennsylvania statute to be unconstitutional and held that its "statutory scheme is unconstitutional to the extent that it confers upon Pennsylvania courts general jurisdiction over foreign corporations that are not 'at home' in Pennsylvania pursuant to [*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)] and [*Daimler AG v. Bauman*, 571 U.S. 117 (2014)]." Accordingly, Plaintiff cannot rely on this statute to trigger this Court exercising general personal jurisdiction over CLS with respect to the out-of-state Opt-In Plaintiffs' and putative opt-in plaintiffs' claims.

[9] CLS did not waive this personal jurisdiction defense because it timely asserted the defense in its Answers filed on December 27, 2022 and March 15, 2023. (Doc. 29 at ¶ 150; Doc. 52 at ¶ 149); *see also Wilkerson v. Walgreens Specialty Pharmacy LLC*, No. CV-21-01427-PHX-JAT, 2022 WL 15520004, at *2 (D. Ariz. Oct. 27, 2022) (holding that defendant did not waive its personal jurisdiction argument with respect to out-of-state opt-in plaintiffs' FLSA claims where defendant raised its personal jurisdiction argument in its answer to Plaintiff's second amended complaint); *Bethel v. BlueMercury, Inc.*, No. 21 CIV. 2743 (KPF), 2022 WL 3594575, at *8 (S.D.N.Y. Aug. 22, 2022) (holding that defendant did not waive its personal jurisdiction argument with respect to out-of-state opt-in plaintiffs' FLSA claims where opt-in plaintiff filed notice of consent to join after defendant answered the complaint and defendant asserted the defense in its certification opposition brief).

[10] Such a collective action would include roughly: (i) 24 Title Agents; (ii) 142 ROW Agents; (iii) 176 Sr. Title Agents; (iv) 508 Sr. ROW Agents; (v) 26 Lead Title Agents; (vi) 60 Lead ROW Agents; (vii) 10 Title Supervisors; and (viii) 44 ROW Supervisors (including Weinmann). (Ex. 3 at ¶ 10.) CLS' Sr. ROW Agents and ROW Agents worked on approximately 3,353 and 2,306 client projects, respectively, and were supervised by approximately 97 different Project Managers or ROW Supervisors during the relevant time period. (*Id.*) CLS' Sr. Title Agents and Title Agents worked

Opt-In Plaintiffs themselves demonstrate the distinctions plaguing Plaintiff's proposed collective action. (*See* Ex. 3 at ¶ 13.) Such a "hodge-podge" of claimants are not sufficiently similarly situated to merit conditional certification under the intermediate standard—or, arguably, under "the most lenient of standards." *Sloane*, 2017 WL 1105236, at *13 (denying conditional certification where the evidence constituted "a handful of heterogeneous claimants who worked in different locations, in different positions, for different clients and supervisors, under different pay agreements"). Accordingly, in the event the Court is willing to allow conditional certification of some class of ROW Agents, the Court must limit the class to only individuals plausibly similarly situated—in terms of position and project—to Plaintiff. *See Fitch v. Giant Eagle Inc.*, No. 2:18-CV-01534-RJC, 2020 WL 8620076, at *4 (W.D. Pa. Oct. 28, 2020), *report and recommendation adopted*, No. 218CV01534RJCCRE, 2021 WL 704147 (W.D. Pa. Feb. 23, 2021) (finding a "narrower definition comports with the discovery completed so far and it is not improper for a putative collective to revise its definition consistent with the evidence in the case"). Based on the foregoing, this Court must narrow any conditionally certified class to include only ROW Supervisors employed by CLS in Pennsylvania on the PPL Project in the past three years.

**D. Objections to Plaintiff's proposed Notice and Consent forms and distribution methods.**

CLS asserts the following objections to Plaintiff's proposed Notice and Consent forms (Doc. 60-1) and distribution methods, and attaches its proposed revisions to the Notice (in redline) as <u>Exhibit 10</u>:

- CLS objects to the language noting "time is of the essence" as it seeks to pressure potential class members to join. *Delara v. Diamond Resorts Int'l Mktg., Inc.*, 2020 WL 2085957, at *5–6 (D. Nev. Apr. 30, 2020). CLS further objects to the repeated misstatements that CLS' ROW Agents are paid a "day rate."

---

on approximately 1,160 and 1,894 different client projects, respectively, and were collectively supervised by approximately 18 different Project Managers or Title Supervisors. (*Id.*)

- CLS objects to statements that this Court has "allowed or certified" a collective action lawsuit, "authorized" notice, and "determined" potential class members are "entitled to make an informed choice"—all of which give "the erroneous impression that maintenance of the action has a judicial imprimatur of approval." *Sperling v. Hoffman-La Roche Inc.*, 862 F.2d 439, 447 (3d Cir. 1988), *affirmed*, *Hoffman-La Roche Inc v. Sperling*, 493 U.S. 165, 174 (1989). Rather, the notice should include language stating that this Court has made no rulings on the merits of Plaintiff's claims. *Barrera v. US Airways Grp., Inc.*, 2013 WL 4654567, *8 (D. Ariz. August 30, 2013).

- The Notice is missing: (1) language informing potential class members they may be required to participate in discovery, *see Adams v. QVC, Inc.*, No. CV 21-0646, 2021 WL 5906242, at *4 (E.D. Pa. Dec. 14, 2021); and (2) CLS' counsel's contact information, *see Thomas v. Walmart, Inc.*, No. 18-4717, 2019 WL 7041809, at *4 (E.D. Pa. Dec. 19, 2019).

- CLS objects to the extent the proposed Notice encourages potential class members to contact Plaintiff's counsel if they "suspect retaliation." This language is inflammatory, irrelevant, and constitutes an impermissible solicitation. *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991).

- Plaintiff has not shown a need to approve multiple methods of notice and the various costs associated therewith. *See, e.g., Sellers v. Sage Software, Inc.*, No. 1:17-CV-03614-ELR, 2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018). Further, CLS objects to the request to send notice by email as overly intrusive. *Boyington v. Percheron Field Servs., LLC*, No. 14-90, 2015 WL 3756330, at *1 (W.D. Pa. June 16, 2015). Likewise, CLS objects to Plaintiff's request to text potential class member as overly duplicative and unnecessary. *Bellan v. Capital BlueCross*, 496 F. Supp. 3d 854, 860 (M.D. Pa. 2020); *see also Steinberg v. TD Bank, N.A.,* No. 10–5600, 2012 WL 2500331, at *6 (D.N.J. June 27, 2012).

- Given the potential for abuse and the lack of necessity, Plaintiff's counsel should not be authorized to follow up with any potential class members via telephone or text. *Pierce v. Apache Corp.,* No. CV H-18-1803, 2019 WL 338129, at *4 (S.D. Tex. Jan. 28, 2019); *see also Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012).

- Paragraph 5 should be struck from the Consent form. Plaintiff's counsel should be required to obtain additional authorizations from opt-in plaintiffs before filing separate lawsuits *with them as the named plaintiffs* to ensure proper consent and avoid duplicative litigation.

## IV.    CONCLUSION

For the foregoing reasons, CLS respectfully requests that the Court deny Plaintiff's Motion or, alternatively, limit the proposed class to only those positions and projects to which Plaintiff can appropriately represent.

# TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | *Clark* Deposition of CLS' Corporate Representative and VP of Human Resources, Lesley Buentello |
| 2 | *Clark* Deposition of CLS' Regional Manager, Brad Irby |
| 3 | Declaration of Lesley Buentello |
| 3-A | CLS' Amendment to Registration |
| 3-B | CLS' Texas Franchise Tax Public Information Report |
| 3-C | Job Description: Right-of-Way Agent |
| 3-D | Job Description: Sr. Right-of-Way Agent |
| 3-E | Job Description: Lead Right-of-Way Agent |
| 3-F | Job Description: ROW Title Agent |
| 3-G | Job Description: Sr. Title Agent |
| 3-H | Job Description: Lead Title Agent |
| 3-I | Job Description: ROW Supervisor |
| 3-J | Job Description: ROW Title Supervisor |
| 3-K | Gayl Weinmann Employee Placement Form |
| 3-L | Vaugh Deen Employee Placement Form |
| 3-M | Blair Ebersold Employee Placement Form |
| 3-N | Bridgett Minogue Employee Placement Form |
| 3-O | Brittany Minogue Employee Placement Form |
| 4 | Declaration of Jerrod Mickelson |
| 5 | Declaration of Walter DeLap |
| 5-A | Walter DeLap Employee Placement Form – Duke TUG - FL |
| 5-B | Walter DeLap Employee Placement Form – QUES-GA Power |
| 6 | Declaration of Brian Quinlan |
| 6-A | Brian Quinlan Employee Placement Form – Phillips 66 - Missouri |
| 7 | Declaration of Annalyn Gill |
| 8 | Declaration of Philip Pack |
| 9 | Declaration of Shawn Reynolds |
| 9-A | Shawn Reynolds Employee Placement Form – Duke TUG - FL |
| 10 | Redlined Proposed Notice and Consent Forms and Script |