# EXHIBIT 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| GAYL WEINMANN, Individually and for Others Similarly Situated, § § § *Plaintiff*, § § § v. § § CONTRACT LAND STAFF, LLC, § § *Defendant*. § | CASE NO. 2:22-cv-01140-DSC |

**DEFENDANT CONTRACT LAND STAFF, LLC'S OBJECTIONS AND RESPONSES TO PLAINTIFF GAYL WEINMANN'S FIRST SET OF DISCOVERY**

To:  Plaintiff, Gayl Weinmann, by and through her counsel of record, Michael A. Josephson, Andrew W. Dunlap, Richard M. Schreiber, JOSEPHSON DUNLAP LLP, 11 Greenway Plaza, Suite 3050, Houston, TX, 77046; Richard J. (Rex) Burch, BRUCKNER BURCH, PLLC, 11 Greenway Plaza, Suite 3025, Houston, Texas 77046; and Joshua P. Geist, GOODRICH & GEIST, P.C. 3634 California Avenue, Pittsburgh, PA, 15212

Defendant Contract Land Staff, LLC ("Defendant" or "CLS"), in accordance with the Federal Rules of Civil Procedure, serves its Objections and Responses to Plaintiff Gayl Weinmann's ("Plaintiff" or "Weinmann") First Set of Discovery. All documents to be produced in response to these discovery requests shall be produced upon the entry of an agreed-upon protective order to govern the production of confidential and/or commercially sensitive documents.

Respectfully submitted,

*/s/ Meghaan C. Madriz*
Meghaan C. Madriz (*pro hac vice*)
mmadriz@mcguirewoods.com
Texas Bar No. 24070241
S.D. Tex. No. 1062431
MCGUIREWOODS LLP
600 Travis Street, Suite 7500

Houston, Texas 77002
(832) 255-6365 Telephone
(832) 214-9935 Facsimile

Adam T. Simons
Pa. Id. No. 322256
MCGUIREWOODS LLP
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202
410-659-4417
asimons@mcguirewoods.com

**ATTORNEYS FOR DEFENDANT
CONTRACT LAND STAFF, LLC**

**CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing instrument has been served on all counsel of record via e-mail in accordance with the Federal Rules of Civil Procedure on this 10th day of May 2023.

Michael A. Josephson
mjosephson@mybackwages.com
Andrew W. Dunlap
adunlap@mybackwages.com
Richard M. Schreiber
rschreiber@mybackwages.com
JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
(713) 751-0025 Telephone
(713) 751-0030 Facsimile

Richard J. (Rex) Burch
rburch@brucknerburch.com
BRUCKNER BURCH PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 770476
(713) 877-8788 Telephone
(713) 877-8065 Facsimile

Joshua P. Geist
josh@goodrichandgeist.com
GOODRICH & GEIST, P.C.
3634 California Avenue
Pittsburgh, PA, 15212
(412) 766-1455 Telephone
(412) 766-0300 Facsimile

                    */s/ Meghaan C. Madriz*
                    Meghaan C. Madriz (*pro hac vice*)

**ANSWER:** CLS objects to this Interrogatory to the extent it is duplicative of prior requests, namely Plaintiff's Interrogatory No. 1. Likewise, CLS objects to this Interrogatory as overbroad, disproportionate to the needs of the case, and seeking information not relevant to Plaintiff's currently pled claims or CLS' defenses. Specifically, CLS objects that the information with respect to an alleged "decision not to rehire" is beyond the scope of discovery as it is not relevant to any of Plaintiff's currently pled wage and hour claims. FED. R. CIV. P. 26(b)(1). Rather, the Interrogatory is an impermissible fishing expedition related to the unsubstantiated allegations of retaliation in Plaintiff's Emergency Motion for Protective Order and Corrective Notice—which the Court denied. (Doc. 51.) CLS further objects to this Interrogatory because it assumes facts not in evidence, namely that CLS had purportedly made a "decision not to rehire" Plaintiff or any Opt-In Plaintiff. Further, CLS objects that Plaintiff's Interrogatory seeks information regarding (i) individuals who have not consented to be parties to this suit, and (ii) a putative class and collective action that has not yet been certified. *See* FED. R. CIV. P. 26(b)(1); *see also Flynn,* 2019 WL 414912, at *5.

Additionally, based on binding Third Circuit precedent, CLS objects to this Interrogatory on personal jurisdiction grounds to the extent it seeks discovery related to the Opt-In Plaintiffs, who do not live in Pennsylvania, did work for CLS in Pennsylvania during the three-year period preceding the date of their consent forms being filed in this lawsuit, and do not currently work for CLS in Pennsylvania. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 372, 388 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 1001 (2023). Until the Court resolves this jurisdictional issue, CLS will not engage in discovery on the claims of any Opt-In Plaintiffs who worked for CLS outside of Pennsylvania during the potentially relevant three-year period. CLS further incorporates its objections to the term "Putative Class Members" as stated in General Objection Nos. 14-18.

Subject to and without waiving the foregoing objections, CLS responds as follows: CLS is not aware of any decision made by CLS to not rehire Plaintiff based on her filing this lawsuit.

**INTERROGATORY NO. 6:** IDENTIFY all PUTATIVE CLASS MEMBERS who were paid a day-rate for all hours worked during the LIMITATIONS PERIOD, regardless of whether YOU contend these workers were paid a salary, guaranteed a certain number of hours per day worked, or guaranteed a certain number of days worked.

**ANSWER:** CLS objects to this Interrogatory as premature, overbroad, and seeking information not relevant to Plaintiff's claims or CLS' defenses. Specifically, Plaintiff's Interrogatory seeks information regarding (i) individuals who have not consented to be parties to this suit, and (ii) a putative class and collective action that has not yet been certified. *See* FED. R. CIV. P. 26(b)(1); *see also Flynn,* 2019 WL 414912, at *5. CLS further objects to this Interrogatory because it unnecessarily infringes upon the privacy interests of third parties not involved in this action, and thus their privacy interests outweigh the probative value, if any, of the requested information. CLS further incorporates its objections to the term "Putative Class Members" as stated in General Objection Nos. 14-18. CLS also objects to the phrase "paid a day rate," to the extent it assumes CLS paid a day rate in violation of the FLSA—which CLS maintains it did not. Indeed, CLS objects to this Interrogatory and, particularly, the use of the term "regardless" as it necessarily seeks information that is not relevant and, thus, outside the scope of discovery. Finally, CLS also

11

**INTERROGATORY NO. 7:** Please describe with detail and specificity YOUR contentions regarding all material differences in the compensation practice and job duties between PLAINTIFF and PUTATIVE CLASS MEMBERS for purposes of determining whether they are similarly situated under FLSA, PMWA, and IMWL.

**ANSWER:** CLS objects to this Interrogatory to the extent it impermissibly seeks CLS' mental impressions, conclusions, opinions, or legal theories concerning this litigation. FED. R. CIV. P. 26(b)(3). Specifically, CLS objects to the use of the terms "contentions" and "all material differences" as overbroad, unduly burdensome, and requiring CLS to marshal its legal and factual positions before trial. Given the early stage of this suit, CLS need not answer this Interrogatory until, at the earliest, the completion of discovery. *See* FED. R. CIV. P. 33(a)(2). Although demanding that CLS respond with "detail and specificity," this Interrogatory fails to specify with any particularity the information sought and the relevance of such overbroad information requested as to Plaintiff's claims and CLS' defenses currently at issue. Next, CLS objects to this Interrogatory as premature and seeking information that is neither relevant nor proportional to the needs of this case. Specifically, Plaintiff's Interrogatory seeks information regarding a collective action and/or class actions that have not yet been certified. *See* FED. R. CIV. P. 26(b)(1); *see also Flynn*, 2019 WL 414912, at *5. CLS further incorporates its objections to the term "Putative Class Members" as stated in General Objection Nos. 14-18. Additionally, this Interrogatory is not limited to the wage and hour laws and practices relevant to this case. Specifically, Plaintiff is not a proper class representative with respect to Plaintiff's claims under the IMWL and cannot bring class claims—or seek related discovery—thereunder. *See, e.g., Spagnola*, 264 F.R.D. at 96; *O'Shea*, 414 U.S. at 494; *Prado*, 221 F.3d at 1279-80. Thus, to the extent this Interrogatory requests information regarding the IMWL state law class action claims, CLS objects that it seek information not relevant to the operative claims and is an abuse of the discovery process. Finally, CLS objects to this Interrogatory to the extent it seeks privileged attorney-client communications and attorney work product. *See* FED. R. EVID. 501; FED. R. CIV. P. 26(b)(3).

Subject to and without waiving the foregoing objections, CLS refers Plaintiff to its Memorandum of Law in Support of Defendant's Opposition to Plaintiff's Motion for Conditional Certification and Court-Approved Notice (and all exhibits attached thereto).

**INTERROGATORY NO. 8:** Do YOU claim that any exemption defense may be applicable to one or more claims made against YOU by PLAINTIFF and the PUTATIVE CLASS MEMBERS? If so, please state the factual and legal basis for each of YOUR contentions.

**ANSWER:** CLS objects to this Interrogatory to the extent it impermissibly seeks CLS' mental impressions, conclusions, opinions, or legal theories concerning this litigation. FED. R. CIV. P. 26(b)(3). Specifically, CLS objects to the use of the phrase "factual and legal basis" as overbroad, unduly burdensome, and requiring CLS to marshal its legal and factual positions before trial. Given the early stage of this suit, CLS need not answer this Interrogatory until, at the earliest, the completion of discovery. *See* FED. R. CIV. P. 33(a)(2). Next, CLS objects to this Interrogatory as premature and seeking information that is neither relevant nor proportional to the needs of this

case. Specifically, Plaintiff's Interrogatory seeks information regarding a collective action and/or class actions that have not yet been certified. *See* FED. R. CIV. P. 26(b)(1); *see also Flynn,* 2019 WL 414912, at *5. CLS further objects to this Interrogatory to the extent it seeks privileged attorney-client communications and attorney work product. *See* FED. R. EVID. 501; FED. R. CIV. P. 26(b)(3).

Additionally, based on binding Third Circuit precedent, CLS objects to this Interrogatory on personal jurisdiction grounds to the extent it seeks discovery related to the Opt-In Plaintiffs, who do not live in Pennsylvania, did work for CLS in Pennsylvania during the three-year period preceding the date of their consent forms being filed in this lawsuit, and do not currently work for CLS in Pennsylvania. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 372, 388 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 1001 (2023). Until the Court resolves this jurisdictional issue, CLS will not engage in discovery on the claims of any Opt-In Plaintiffs who worked for CLS outside of Pennsylvania during the potentially relevant three-year period. CLS further incorporates its objections to the term "Putative Class Members" as stated in General Objection Nos. 14-18.

Subject to and without waiving the foregoing objections, and reserving the right to argue additional exemptions may apply in this matter (depending on the outcome of Plaintiff's pending Motion for Conditional Certification and any forthcoming motion for class certification), CLS refers Plaintiff to its Memorandum of Law in Support of Defendant's Opposition to Plaintiff's Motion for Conditional Certification and Court-Approved Notice (and all exhibits attached thereto).

CLS further responds as follows with respect to Plaintiff:

Exemption defenses are applicable to Plaintiff's claims in this matter. CLS compensated Plaintiff on a salary basis semi-monthly during the potential three-year statute of limitations period (however, CLS denies such longer statute of limitations applies to Plaintiff's claims) pursuant to 29 C.F.R. § 541.604(b). Plaintiff earned above the minimum salary amount of $455 required for the executive and administrative exemptions (during August 4, 2019 to October 25, 2019).

According to Plaintiff's CLS Employee Placement Form for the PPL project (on which she worked between approximately December 26, 2017 through October 25, 2019), Plaintiff was scheduled to work six days per week. For Plaintiff's work on the PPL project, CLS guaranteed her a minimum salary of approximately 75% of her usual earnings at the assigned day rate for her normal scheduled workweek. Plaintiff's day-rate for this project was $345 per day and her normal scheduled workweek was six days; thus, her guaranteed salary was approximately $1,552.50 per week (regardless of the number of hours or days worked by Plaintiff). Other than her final week of employment with CLS, Plaintiff worked all six assigned workdays during each workweek between August 4, 2019 and her termination from employment while on the PPL project. At the bottom of Plaintiff's Employee Placement Form for the PPL Project, CLS advised Plaintiff in red font of this minimum salary guarantee plus her ability to earn above the salary guarantee based on her time actually worked and project day rate, as follows:

*You will be paid the applicable Day Rate for each full day of work, subject to normal withholdings. The Day Rate will be paid in ¼ day increments, therefore, for example, you will receive ¼ of the Day Rate for ¼ day's work. For each week you perform any work, you will be paid the greater of (a) time actually worked in ¼ day increment at your Day Rate or (b) a guaranteed minimum salary that will be approximately 75% of your usual earnings at the assigned Day Rate for your normal scheduled workweek. The only exception to the above will be at the beginning and end of projects.

During the time period potentially relevant to this lawsuit, Plaintiff worked for CLS on one client project—the PPL project in Pennsylvania for CLS' client Pennsylvania Power Light Electric Utilities Corporation. Plaintiff was a ROW Supervisor on this project from approximately December 26, 2017 until her resignation on October 25, 2019. During her entire tenure on the PPL project, Plaintiff was employed as a ROW Supervisor and never as a ROW Agent or Sr. ROW Agent. In her role as a ROW Supervisor, Plaintiff was responsible for supervising a team of approximately four project personnel consisting of three ROW Agents and one Lead ROW Agent. The ROW Agents and Lead ROW Agent on the PPL project working directly under Plaintiff's supervision were responsible for communicating and negotiating with landowners on PPL's behalf, educating the landowners on the benefits of participating in the PPL program, and developing a relationship with the landowners in order to facilitate CLS' acquisition of certain easement rights for PPL relating to the landowner's real property. As their ROW Supervisor, Plaintiff was responsible for providing the ROW Agents with training and coaching, keeping track of their productivity, creating a game plan and timetable for upcoming projects, and regularly meeting and providing updates to the client. Unlike the ROW Agents she supervised, Plaintiff did not directly negotiate with landowners, but she would occasionally accompany her ROW Agents on meetings with landowners for training and coaching purposes. Other job duties of Plaintiff on the PPL project included: (i) making recommendations as to the hiring, firing, advancement, promotion or any other change of status of project personnel under her supervision; (ii) disciplining project personnel under her supervision who were not performing up to standards; and (iii) carrying out supervisory responsibilities in accordance with CLS' policies and applicable laws. In performing these supervisory tasks, Plaintiff exercised a significant amount of discretion in deciding how to best train, motivate, and manage her direct reports in the performance of their job duties as ROW Agents.

Based on the preceding, CLS maintains it properly classified Plaintiff as exempt under the executive and/or administrative exemptions.

**INTERROGATORY NO. 9:** Do YOU claim that any "salary basis" defense may be applicable to one or more claims made against YOU by PLAINTIFF or PUTATIVE CLASS MEMBERS? If so, please state the factual and legal basis for each of YOUR contentions.

**ANSWER:** CLS objects to this Interrogatory to the extent it impermissibly seeks CLS' mental impressions, conclusions, opinions, or legal theories concerning this litigation. FED. R. CIV. P. 26(b)(3). Specifically, CLS objects to the use of the phrase "factual and legal basis" as overbroad, unduly burdensome, and requiring CLS to marshal its legal and factual positions before trial. Given the early stage of this suit, CLS need not answer this Interrogatory until, at the earliest, the completion of discovery. *See* FED. R. CIV. P. 33(a)(2). Next, CLS objects to this Interrogatory as premature and seeking information that is neither relevant nor proportional to the needs of this case. Specifically, Plaintiff's Interrogatory seeks information regarding a collective action and/or class actions that have not yet been certified. *See* FED. R. CIV. P. 26(b)(1); *see also Flynn,* 2019

14

WL 414912, at *5. CLS further objects to this Interrogatory to the extent it seeks privileged attorney-client communications and attorney work product. *See* FED. R. EVID. 501; FED. R. CIV. P. 26(b)(3).

Additionally, based on binding Third Circuit precedent, CLS objects to this Interrogatory on personal jurisdiction grounds to the extent it seeks discovery related to the Opt-In Plaintiffs, who do not live in Pennsylvania, did work for CLS in Pennsylvania during the three-year period preceding the date of their consent forms being filed in this lawsuit, and do not currently work for CLS in Pennsylvania. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 372, 388 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 1001 (2023). Until the Court resolves this jurisdictional issue, CLS will not engage in discovery on the claims of any Opt-In Plaintiffs who worked for CLS outside of Pennsylvania during the potentially relevant three-year period. CLS further incorporates its objections to the term "Putative Class Members" as stated in General Objection Nos. 14-18.

Subject to and without waiving the foregoing objections, and reserving the right to argue additional exemptions may apply in this matter (depending on the outcome of Plaintiff's pending Motion for Conditional Certification and any forthcoming motion for class certification), CLS refers Plaintiff to its Memorandum of Law in Support of Defendant's Opposition to Plaintiff's Motion for Conditional Certification and Court-Approved Notice (and all exhibits attached thereto).

CLS further responds as follows with respect to Plaintiff:

CLS compensated Plaintiff on a salary basis semi-monthly during the potential three-year statute of limitations period (however, CLS denies such longer statute of limitations applies to Plaintiff's claims) pursuant to 29 C.F.R. § 541.604(b). Plaintiff earned above the minimum salary amount of $455 required for the executive and administrative exemptions (during August 4, 2019 to October 25, 2019).

According to Plaintiff's CLS Employee Placement Form for the PPL project (on which she worked between approximately December 26, 2017 through October 25, 2019), Plaintiff was scheduled to work six days per week. For Plaintiff's work on the PPL project, CLS guaranteed her a minimum salary of approximately 75% of her usual earnings at the assigned day rate for her normal scheduled workweek. Plaintiff's day-rate for this project was $345 per day and her normal scheduled workweek was six days; thus, her guaranteed salary was approximately $1,552.50 per week (regardless of the number of hours or days worked by Plaintiff). Other than her final week of employment with CLS, Plaintiff worked all six assigned workdays during each workweek between August 4, 2019 and her termination from employment while on the PPL project. At the bottom of Plaintiff's Employee Placement Form for the PPL Project, CLS advised Plaintiff in red font of this minimum salary guarantee plus her ability to earn above the salary guarantee based on her time actually worked and project day rate, as follows:

*You will be paid the applicable Day Rate for each full day of work, subject to normal withholdings. The Day Rate will be paid in ¼ day increments, therefore, for example, you will receive ¼ of the Day Rate for ¼ day's work. For each week you perform any work, you will be paid the greater of (a) time actually worked in ¼ day increment at your Day Rate or (b) a guaranteed minimum salary that will be approximately 75% of your usual earnings at the assigned Day Rate for your normal scheduled workweek. The only exception to the above will be at the beginning and end of projects.

A copy of Plaintiff's Employee Placement Form for the PPL project will be produced in this case and is attached as Exhibit K to the Declaration of Lesley Buentello (filed in support of Defendant's Opposition to Plaintiff's Motion for Conditional Certification and Court-Approved Notice).